UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BRIAN RODRIGUEZ,

                      Plaintiff,

   -against-

NIKE RETAIL SERVICES, INC.,

                      Defendant.
---------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands
Trial by Jury

Plaintiff, by his attorneys, DeTOFFOL & GITTLEMAN, Attorneys at Law, complains of the Defendant herein, alleging at all relevant and material times and upon information and belief, as follows:

### Nature of the Case

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), seeking damages and other relief for a hostile work environment based on race, national origin, and sex (gender), and for retaliation.

### Jurisdiction & Venue

1.     Jurisdiction of this action is conferred upon the Court insofar as this action involves a federal question under Title VII of the Civil Rights Act. The Court, pursuant to *Gibbs*, 38 U.S. 715 (1966), also has supplemental jurisdiction over the Counts based on the laws of the State of New York.

1

2.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York, and Plaintiff was employed by Defendant in this District.

3.  Plaintiff received a Right to Sue Letter on July 29, 2025, and this Complaint has been filed within 90 days of receipt of the aforementioned permission letter.

4.  Plaintiff Brian Rodriguez ("Mr. Rodriguez" or "Plaintiff") is a male individual who resides in Bronx County, New York.

5.  At all relevant times, Defendant NIKE RETAIL SERVICES, INC. ("Nike Retail Services") was and is a foreign business corporation organized under the laws of Oregon, authorized to do business in New York, and doing business in New York County.

6.  That at all times hereinafter mentioned, defendant NIKE RETAIL SERVICES, INC. did own, maintain, operate, manage, and control the NIKE location at 529 Broadway, New York, NY, and did employ the staff there.

7.  Defendant, upon information and belief, has employed not less than fifteen employees for all relevant periods, and the entire time period of Plaintiff's employment, and is a covered employer subject to Title VII.

8.  At all relevant times, Plaintiff was employed by Defendants.

9.  Plaintiff, for all relevant periods herewith, was a Title VII-covered employee of Defendant.

10. There was a direct employer-employee relationship between Plaintiff and Defendant, in which the Defendant hired the Plaintiff and provided him with a wage for his work.

11. Supervisor Tamika Brown ("Specialist Brown") is an employee of Defendant, with the supervisory authority, performance authority, and hiring and firing capacity over Mr. Rodriguez.

12. Assistant Store Manager Jasmine Marron ("Head Coach Marron") is an employee of Defendant, with the supervisory authority, performance authority, and hiring and firing capacity over Mr. Rodriguez.

13. Manager Joel ("Coach Apostol") is an employee of Defendant, with the supervisory authority, performance authority, and hiring and firing capacity over Mr. Rodriguez.

14. Manager Alex Wadsworth is an employee of Defendant, with the supervisory authority, performance authority, and hiring and firing capacity over Plaintiff.

15. Manager Deana Carrington is an employee of Defendant with the supervisory authority, performance authority, and hiring and firing capacity over Plaintiff.

16. Assistant Department Manager Matthew Smart ("Assistant Department Manager Smart") is an employee of Defendant, with the supervisory authority, performance authority, and hiring and firing capacity over Plaintiff.

17. Supervisor Roberts ("Supervisor Roberts") is an employee of Defendant.

18. Defendant hired Mr. Rodriguez on or about August 13, 2018, as a Sales Associate "Athlete" ("Athlete") at Defendant's Soho location.

## RACE & NATIONAL ORIGIN HARASSMENT

19. Plaintiff is Dominican and, throughout his employment, his supervisors and coworkers referenced and mocked his Dominican identity.

20. Supervisor Tamika ("Specialist") Brown overlapped with Plaintiff throughout his tenure at the Soho store and was a constant presence in Plaintiff's work area, regularly interacting with him during the workday.

3

21. Throughout his employment, Supervisor Brown targeted Plaintiff's Dominican identity with repeated comments about his voice, speech, and supposed "neighborhood," using phrases commonly aimed at Dominicans in New York City.

22. From at least January 2022 through Plaintiff's March 2023 return from medical leave, Brown regularly told Plaintiff to "slow down" because he "talks fast," and to "lower [his] voice," asserting "you are so loud, that's because you are Dominican." These statements expressly tied negative traits (volume, speed of speech) to Plaintiff's Dominican national origin and trafficked in stereotypes about Dominicans.

23. During the same period, Brown repeatedly told Plaintiff "Go back to Washington Heights," "You're not in the Heights," and "This isn't your house, you're not in Dyckman," and asked "Why are you knocking so hard?" These statements referenced Washington Heights and Dyckman, neighborhoods commonly associated with large Dominican communities, to demean the Plaintiff as an outsider who should "go back" to where Dominicans reside. As used by Brown, these "Heights/Dyckman" comments served as a dog-whistle for "because you're Dominican."

24. Brown made one or more of the above statements multiple times each week—often daily—whenever she encountered Plaintiff on the sales floor or in back-of-house, such that the remarks became a regular feature of his workdays. At minimum, Plaintiff experienced these comments every week during the period January 2022 through March 2023, and frequently more than once in a single day.

25. Immediately upon Plaintiff's return from short-term medical leave on or about March 20–21, 2023, Brown resumed the same theme, telling him in substance, "Thank you for the new you… You are not the Dominican loud kid anymore; you calmed down a lot." This statement explicitly labeled Plaintiff "the Dominican loud kid."

26. In or about January–February 2022, after enduring Supervisor Brown's repeated anti-Dominican remarks (e.g., "Go back to Washington Heights," "You are so loud, that's because you are Dominican," and related "Heights/Dyckman" comments), Plaintiff complained in good faith to Head Coach Jasmine Marron and Coach Joel Apostol that Brown was discriminating against him based on his Dominican national origin and making him feel singled out. Marron and Apostol assured Plaintiff they would investigate; however, no corrective action followed, and the discriminatory treatment continued.

27. While Supervisor Brown's remarks were a constant drumbeat, Brown was not the only manager who targeted Plaintiff's Dominican identity.

28. Manager Machado separately reinforced the same national-origin theme, including by pressing Plaintiff to create content that highlighted and stereotyped his being Dominican.

29. In or about 2022–2023, Manager Machado directed Plaintiff to create a store-related video titled, in substance, "Tell me you are Dominican without telling me you are Dominican," and followed up on multiple occasions, pressing Plaintiff to "show" he is Dominican. As used by Machado, this instruction reduced Plaintiff's Dominican national origin to a workplace spectacle soliciting stereotyped mannerisms, speech, and aesthetics associated with Dominicans for coworkers and customers. Treating a protected characteristic as a brand to be performed is not neutral; it is national-origin stereotyping and othering.

30. On or about February 10, 2022, Plaintiff reported to Director Danny Cubas and Store Manager Azizi Henderson that Assistant Head Coach Zaira Machado had directed him to create a video titled, in substance, 'Tell me you are Dominican without telling me you are Dominican.' Plaintiff objected that this instruction reduced his Dominican national origin to a workplace spectacle—i.e., othered him by soliciting stereotyped 'Dominican' traits, and requested that it stop.

5

Rather than take corrective action, management brushed off the complaint, and the national-origin harassment persisted.

31.     On or about June 10, 2022, Plaintiff contacted Employee Relations (Melanie) to complain about Assistant Head Coach Machado's national-origin stereotyping and to reiterate that he was being othered and singled out because he is Dominican. Employee Relations said the matter would be escalated and fixed, but no remedial action occurred.

32.     Beginning immediately upon Plaintiff's return from medical leave in or about April 2024, Manager Alex Wadsworth and Supervisor Deana Carrington began addressing Plaintiff in mock Spanish and with an exaggerated 'Dominican' accent (e.g., 'amigo, go to your break,' 'lunch a la hora,' 'a tu quince'), despite having always spoken to him in English before.

## **SEX-BASED HARASSMENT**

33.      Plaintiff was subjected to sexual harassment.

34.     Supervisor Roberts began his employment at the Workplace as a Sales Associate who worked on the same floor as Plaintiff at the Workplace and eventually became Plaintiff's Supervisor.

35.     From in or about spring 2022 through March 2023, while working overlapping shifts with Plaintiff at the Soho store, Supervisor Roberts repeatedly directed sexual remarks at Plaintiff on the sales floor and in back-of-house stock areas. On multiple occasions each week, often when Plaintiff bent to lift or shelve merchandise, Supervisor Roberts said, "I like your underwear," "I can see your whole dick today," "I like when you wear sweatpants, I can see everything," "Oh, Bambino, you look good today with those sweats," and "I know Bambino has a big dick; I can see it through his sweatpants."

36. These comments were not isolated: they recurred week in and week out, sometimes several times in a single shift, and were plainly sexual in nature, fixating on Plaintiff's genitals and clothing.

37. On or about late 2022 (approximately November–December 2022), at the end of Plaintiff's shift inside the store, Plaintiff introduced his girlfriend, Arwa Chaudhry, to Supervisor Roberts. Supervisor Roberts responded, "Oh, so you are the girlfriend? Just to let you know, I'm his work wife," and continued, "You're so gorgeous… why are you with him? Is it because of his big dick? I know he has a big dick, I can see it through his sweatpants." This incident occurred in front of Ms. Chaudhry, compounding Plaintiff's humiliation.

38. Collectively, Supervisor Roberts' comments occurred repeatedly from spring 2022 through March 2023, at a cadence of multiple times per week (and at times multiple times per day), were explicitly sexual and directed at Plaintiff's body, and therefore were severe and pervasive enough to alter the conditions of employment and create a hostile work environment.

39. Plaintiff's prior reports of race and national origin harassment led to no interviews, no findings communicated to him, no discipline he observed, and no preventative measures (training, reassignment, coaching) that changed the conduct. This reasonably signaled that additional complaints would be futile.

40. On or about May 2023, while Plaintiff was off duty and stopped by the workplace with his girlfriend, Arwa Chaudhry, to pick up a pair of shoes, Supervisor Roberts approached them and said to Ms. Chaudhry, "Hi, other wifey, listen, you need to tell [Plaintiff] to stop wearing pants like that. I can see his whole dick."

41. On or about April 8, 2024, Supervisor Roberts grabbed Plaintiff's arm and pulled him towards him for a hug. Supervisor Roberts then told Plaintiff, "Oh, you lost some weight, I can tell," and made a gesture pointing to Plaintiff's private parts.

42. On or about April 2024, during a conversation with Plaintiff and sales associate Chantae Genus, Supervisor Roberts stated in substance that he was not interested in Ms. Genus and would rather have sexual access to Plaintiff, crudely referring to Plaintiff's genitals and saying he would prefer to use Plaintiff's "thing" with Ms. Genus. He then referred to Plaintiff as his "boo" and "husband" and teased Plaintiff to agree, all in front of Ms. Genus.

43. In or about June 2024, Plaintiff learned that Supervisor Roberts had been reassigned to work on Plaintiff's floor in a leadership role, thereby becoming Plaintiff's direct supervisor.

44. Shortly thereafter, Supervisor Roberts approached Plaintiff and admitted that he should no longer make comments to Plaintiff because he was now in a leadership role.

45. On or about July 2024, Plaintiff emailed Employee Relations and spoke with Specialist Lori Davis to request an investigation into his leadership team. Plaintiff reported that Supervisor Roberts had been sexually harassing him with repeated comments about his genitals, clothing, partner, and coworkers, as well as unsolicited invitations to his home. Plaintiff also reported that managers Alex Wadsworth and Deana Carrington discriminated against him by deliberately speaking to him in mock Spanish, though they addressed other employees in plain English, thereby singling him out because he is Dominican and has an accent.

46. Plaintiff reiterated these concerns to Assistant Department Manager Matthew Smart, specifically reporting Wadsworth and Carrington's discriminatory conduct and Supervisor Roberts' sexual harassment. Plaintiff further reminded Mr. Smart that in March 2023, Wadsworth

8

personally witnessed Supervisor Roberts touch Plaintiff's stomach and make a derogatory comment, yet did nothing to intervene.

47. Plaintiff also told Mr. Smart he was uncomfortable being alone with Supervisor Roberts, that he had to monitor his clothing choices to avoid sexualization, and that since reporting Supervisor Roberts to Employee Relations, Roberts had retaliated by micromanaging him.

48. After Plaintiff formally complained to ER in July 2024 (including sexual harassment by Roberts and national-origin targeting by other managers), ER closed the complaint in August 2024 without action. Shortly after that closure, Plaintiff received a 'final' write-up while conditions remained unchanged, and he was offered no transfer, schedule change, or separation from the harasser.

49. Supervisor Roberts frequently restricted Plaintiff's bathroom access, telling him he could not use the restroom except during scheduled breaks. In or about July 2024, when a customer stole merchandise during Plaintiff's break, despite another employee covering his section, Supervisor Roberts blamed Plaintiff and threatened to report him to management unless Plaintiff first sought permission for bathroom use.

50. On or about August 2024, Plaintiff again reported to Ms. Davis that he felt targeted by Supervisor Roberts because of his prior complaints. Ms. Davis informed Plaintiff that his sexual-harassment complaint would be closed with no action.

51. As a result of Defendant NIKE's inaction, Plaintiff continued to experience harassment, discrimination, and retaliation. Despite his repeated efforts to resolve these issues internally, his complaints were dismissed or minimized, demonstrating Defendant's systemic failure to address and correct unlawful conduct in the workplace.

52. Following ER's August 2024 closure of his complaint without corrective action and a September 2024 'final' write-up issued while conditions remained unchanged, Defendant offered no transfer, schedule change, or separation from the harasser. These actions and omissions made Plaintiff's continued employment intolerable and made his October 4, 2024, resignation a foreseeable consequence of Defendant's deliberate indifference.

53. On or about October 4, 2024, after months of ongoing harassment and Defendant's refusal to take appropriate corrective measures, Plaintiff submitted his resignation, effective October 18, 2024. Plaintiff was thereby constructively discharged.

## COUNT 1
## UNDER FEDERAL TITLE VII
### Race and National Origin-Based Hostile Work Environment

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

55. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant.

56. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race/national origin.

57. SEC. 2000e-2. [Section 703] states as follows: (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

58. Defendant violated the section cited herein as set forth and engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by creating and maintaining a hostile discriminating work environment against Plaintiff because of his race/national origin.

## COUNT 2
## UNDER FEDERAL TITLE VII
### Sex-Based Hostile Work Environment

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

60. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant.

61. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

62. SEC. 2000e-2. [Section 703] states as follows: (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

63. Defendant violated the section cited herein as set forth and engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by creating and maintaining a hostile discriminating work environment against Plaintiff because of his sexual Orientation.

## COUNT 3
## UNDER FEDERAL TITLE VII
### Retaliation

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: (1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

65. Defendant violated the section cited herein as set forth and retaliated against Plaintiff because he opposed Defendant's unlawful employment practices.

## COUNT 4
## UNDER N.Y.S. EXECUTIVE LAW
### Race/National Origin Based Hostile Work Environment

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. Executive Law § 296 provides that : 1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

68.　　Defendant violated the section cited herein as set forth and engaged in an unlawful discriminatory practice by creating and maintaining a hostile discriminating work environment against Plaintiff.

## COUNT 5
## UNDER N.Y.S. EXECUTIVE LAW
### Gender-Sex Based Hostile Work Environment

69.　　Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70.　　Executive Law § 296 provides that : 1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

71.　　Defendant violated the section cited herein as set forth and engaged in an unlawful discriminatory practice by creating and maintaining a hostile discriminating work environment against Plaintiff.

## COUNT 6
## UNDER N.Y.S. EXECUTIVE LAW
### Retaliation

72.　　Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

73. New York State Executive Law §296(7) provides that it shall be an unlawful: For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article.

74. Defendant violated the section cited herein as set forth and engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

## COUNT 7
## NYC ADMINISTRATIVE CODE
### Race/National Origin-Based Harassment & Discrimination

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

77. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining a hostile discriminating work environment against Plaintiff.

## COUNT 8
## NYC ADMINISTRATIVE CODE
### Gender Based Harassment & Discrimination

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

80. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining a hostile discriminating work environment against Plaintiff.

### COUNT 9
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### NYC Retaliation

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. The New York City Administrative Code N.Y.C. Admin. Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

83. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

### Relief

WHEREFORE, Plaintiff respectfully demands against Defendant on each and every respective Count:

(a)     An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for lost past back pay and future front pay wages and attendant benefits;

(b)     An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to past and future non-economic damages for Plaintiff humiliation, pain and suffering and emotional distress sustained;

(c)     An award to Plaintiff of the costs of this action, including Plaintiff's reasonable attorney's fees to the fullest extent permitted by law;

(d)     An award of punitive damages in an amount to be determined at trial, including interest, pre-judgment and post-judgment; and

(e)     Such other and further relief as this Court deems necessary and proper.

## Jury Demand

Plaintiff requests a jury trial on all issues to be tried.

*/s/ Joshua Gittleman*

Joshua Gittleman, Esq.
DeTOFFOL & GITTLEMAN, Attorneys at Law
125 Maiden Lane – Suite 5C
New York, New York  10038
Tel. (212) 962-2220
Attorneys for Plaintiff